IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BILL LIETZKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:17-cv-609-MHT-GMB |
| | ) | [WO] |
| CITY OF MONTGOMERY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| BILL LIETZKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:17-cv-614-MHT-GMB |
| | ) | [WO] |
| CITY OF MONTGOMERY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| BILL LIETZKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:17-cv-626-MHT-GMB |
| | ) | [WO] |
| CITY OF MONTGOMERY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| BILL LIETZKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:17-cv-628-MHT-GMB |
| | ) | [WO] |
| CITY OF MONTGOMERY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____

BILL LIETZKE,                                )
                                             )
      Plaintiff,                         )
                                             )
v.                                           )       CASE NO.: 2:17-cv-674-MHT-GMB
                                             )       [WO]
CITY OF MONTGOMERY, *et al.*,                )
                                             )
      Defendants.                        )
_____

BILL LIETZKE,                                )
                                             )
      Plaintiff,                         )
                                             )
v.                                           )       CASE NO.: 2:17-cv-711-MHT-GMB
                                             )       [WO]
CITY OF MONTGOMERY, *et al.*,                )
                                             )
      Defendants.                        )
_____

BILL LIETZKE,                                )
                                             )
      Plaintiff,                         )
                                             )
v.                                           )       CASE NO.: 2:17-cv-712-MHT-GMB
                                             )       [WO]
CITY OF MONTGOMERY, *et al.*,                )
                                             )
      Defendants.                        )
_____

BILL LIETZKE,                                )
                                             )
      Plaintiff,                         )
                                             )
v.                                           )       CASE NO.: 2:17-cv-713-MHT-GMB
                                             )       [WO]
CITY OF MONTGOMERY, *et al.*,                )
                                             )
      Defendants.                        )

BILL LIETZKE,                    )
                                )
        Plaintiff,              )
                                )
v.                              )        CASE NO.: 2:17-cv-714-MHT-GMB
                                )        [WO]
CITY OF MONTGOMERY, *et al.*,   )
                                )
        Defendants.            )

BILL LIETZKE,                    )
                                )
        Plaintiff,              )
                                )
v.                              )        CASE NO.: 2:17-cv-812-MHT-GMB
                                )        [WO]
CITY OF MONTGOMERY, *et al.*,   )
                                )
        Defendants.            )

BILL LIETZKE,                    )
                                )
        Plaintiff,              )
                                )
v.                              )        CASE NO.: 2:18-cv-012-MHT-GMB
                                )        [WO]
CITY OF MONTGOMERY, *et al.*,   )
                                )
        Defendants.            )

BILL LIETZKE,                    )
                                )
        Plaintiff,              )
                                )
v.                              )        CASE NO.: 2:18-cv-027-MHT-GMB
                                )        [WO]
CITY OF MONTGOMERY, *et al.*,   )
                                )
        Defendants.            )

_____

| | |
|---|---|
| BILL LIETZKE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     CASE NO.: 2:18-cv-395-MHT-GMB |
| | )     [WO] |
| CITY OF MONTGOMERY, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

_____

| | |
|---|---|
| BILL LIETZKE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     CASE NO.: 2:18-cv-469-MHT-GMB |
| | )     [WO] |
| CITY OF BIRMINGHAM, | ) |
| | ) |
|     Defendant. | ) |

_____

| | |
|---|---|
| BILL LIETZKE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     CASE NO.: 2:18-cv-488-MHT-GMB |
| | )     [WO] |
| GREYHOUND LINES, INC., | ) |
| | ) |
|     Defendant. | ) |

## <u>REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

Before the court are 15 *pro se* complaints filed by Plaintiff Bill Lietzke.  Many of the complaints are virtually identical and most were originally filed in other courts, including the United States District Court for the District of Maine, the District of Montana, and the Eastern District of Michigan.  The cases filed elsewhere have been transferred to this court and all of the cases have been referred to the undersigned United States

Magistrate Judge for consideration and disposition pursuant to 28 U.S.C. § 636.  Because Lietzke has moved for leave to proceed *in forma pauperis*, the court reviews his complaints pursuant to the provisions of 28 U.S.C. § 1915(e)(2).  This statute instructs the court to dismiss any action in which it is determined that an *in forma pauperis* applicant's lawsuit is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)−(iii).  After a careful review of each complaint and the relevant law, and giving due consideration to Lietzke's *pro se* status, the undersigned recommends that the above-captioned actions be consolidated, that the pending motions to proceed *in forma pauperis* be granted, and that all of Lietzke's complaints be dismissed prior to service of process pursuant to 28 U.S.C. §§ 1915(e)(2)(B).

## I.  BACKGROUND

Plaintiff Bill Lietzke is well known to this court, having continually filed frivolous lawsuits against the City of Montgomery, Alabama, and its police officers for more than a decade. *See, e.g.*, *Lietzke v. City of Montgomery*, 2014 WL 558995 (M.D. Ala. Feb. 13, 2014); *Lietzke v. City of Montgomery*, 2008 WL 2113382 (M.D. Ala. May 16, 2008); *Lietzke v. City of Montgomery*, 2007 WL 2126525 (M.D. Ala. July 23, 2007); *Lietzke v. Bright*, 2007 WL 1441200 (M.D. Ala. May 16, 2007).  Lietzke also has filed many cases in other districts. *See, e.g.*, *Lietzke v. City of Montgomery*, 2017 WL 4698793 (D. Me. Oct. 19, 2017); *Lietzke v. City of Montgomery*, 2017 WL 58829 (D.S.D. Jan. 5, 2017); *Lietzke v. City of Montgomery*, 2016 WL 9818319 (D.N.M. Nov. 29, 2016); *Lietzke v. Cnty. of Montgomery*, 2013 WL 6452318 (D. Nev. Dec. 9, 2013); *Lietzke v. City of Montgomery*,

2012 WL 2326110 (D. Idaho May 29, 2012).[1]  Lietzke filed the 15 pending complaints between August 2017 and May 2018, with the two most recent complaints filed in this court on May 4 and May 14, 2018.  In all of the complaints except three,[2] Lietzke names the "City of Montgomery, et al" and Kevin Murphy as the defendants.

**A.      Cases Filed Elsewhere**

Lietzke's allegations center on what he characterizes as a series of unlawful detentions by City of Montgomery police officers.  In each of Lietzke's complaints, he contends that he was "detained" by police officers "without lawful privilege" when they asked questions of him on certain roadways in Montgomery or outside of a post office or a church.  In some instances, the officers merely asked Lietzke, "What's going on?"  *See* Doc. 1 at 2 (2:17-cv-614), Doc. 1 at 2 (2:17-cv-626), Doc. 1 at 2 (2:17-cv-628) & Doc. 1 at 2 (2:18-cv-027).   In another, the officers asked for identification and for personal information. *See* Doc. 1 at 1 (2:17-cv-609).  The officers sometimes told Lietzke they had received a "false report" that Lietzke had been "chasing someone." *See* Doc. 1 at 2 (2:17-cv-626), Doc. 1 at 2 (2:17-cv-628) & Doc. 1 at 2 (2:18-cv-395).  In two of the complaints, the officers approached Lietzke while he was walking on Interstate 85. *See* Doc. 1 at 2 (2:17-cv-812) & Doc. 1 at 2 (2:18-cv-012).  Lietzke alleges that he uses this particular highway because it grants him "public access, and more safer access, to the Montgomery

---

[1] The court notes that this is not an exhaustive list, but represents a sampling of the cases Lietzke has filed in this and other districts.

[2] In one of the three, Lietzke sued the "County of Montgomery, et al," "Reese McKinney," and "D.T. Marshall." *See* Doc. 1 (2:17-cv-674).  The alleged conduct in this complaint took place between 1999 and 2002.  In the two complaints filed in this district, Lietzke named the City of Birmingham as the defendant in one and Greyhound Lines, Inc., as the defendant in the other. *See* Doc. 1 (2:18-cv-469) & Doc. 1 (2:18-cv-488).

Ann Street Walmart supermarket." Doc. 2 at 2 (2:17-cv-812) & Doc. 2 at 2 (2:18-cv-012). The officers "proceeded to demand that [Lietzke] exit the I 85 Interstate and take an alternative route." Doc. 1 at 2 (2:17-cv-812) & Doc. 1 at 2 (2:18-cv-012).

During these encounters, the officers "demand[ed] personal and private information from the Plaintiff as to the Plaintiff's 'ID,' 'social security number,' 'date of birth,' and 'name.'" Doc. 1 at 1 (2:17-cv-609).   Eventually, they would release him "on his own recognizance." *E.g.*, Doc. 1 at 1 (2:17-cv-609).  Lietzke contends that in each instance, the officers did not have probable cause or "lawful privilege" and infringed on his right to "assemble under the First Amendment" as well as his "right to plead the Fifth Amendment." *E.g.*, Doc. 1 at 1 (2:17-cv-609).  Lietzke also directs his attention toward those who allegedly called the police, bringing claims for defamation in several of the complaints and demanding to know the identities of the complainants.  Lietzke contends that the officers' actions caused mental anguish and amounted to an "intention infliction of emotional distress," and he demands a monetary award of one billion or two billion dollars.

One complaint filed in the Eastern District of Michigan contains allegations substantially different from the rest.  In it, Lietzke alleges that from 1999 to 2002 he was repeatedly "abducted, harassed, and kidnapped" by officers who falsely imprisoned him. *See* Doc. 1 at 1–5 (2:17-cv-674).  Lietzke alleges that in August 1999 these officers forcibly removed him from his home and took him to a hospital in Montgomery, where he was "incarcerated" and "could not leave." Doc. 1 at 1 (2:17-cv-674).  Later that day, they took him from the hospital to the Montgomery County Probate Court and then to a psychiatric hospital. Doc. 1 at 2 (2:17-cv-674).  Thus, the officers "in the course of one unlawful act

after another, procured the unlawful violation of the personal liberty of [Lietzke], and procured the false imprisonment of [Lietzke], for any appreciable time however brief." Doc. 1 at 2 (2:17-cv-674).  During the course of this encounter, Lietzke alleges that the officers "struck, shoved, kicked, and touched" him, subjecting him to "multiple unlawful physical contacts." Doc. 1 at 3 (2:17-cv-674).

Lietzke claims that similar events occurred one week later, on August 9, when officers "dragged" him from the hospital to the probate court and "instituted unlawful proceedings motivated by malice in fact against [Lietzke] in the Montgomery County Probate [Court] without probable cause therefor." Doc. 1 at 2 (2:17-cv-674).  After the proceedings, the officers took him back to the hospital. Doc. 1 at 2 (2:17-cv-674).  Then, on August 11, they again "harassed and seized" Lietzke and took him to the same psychiatric hospital. Doc. 1 at 2–3 (2:17-cv-674).

## B.   Middle District Cases

The two complaints Lietzke has filed in this district contain factual allegations from a separate incident.  These complaints center on events that allegedly occurred on April 20, 2018 at a Greyhound bus station in Birmingham, Alabama.  Lietzke asserts that two "unidentified, unspecified black male Birmingham Greyhound Lines, Inc. Defendants procured the unlawful arrest, the unlawful violation of the personal liberty, and the subsequent false imprisonment of [Lietzke]." Doc. 1 at 1 (2:18-cv-469); *see also* Doc. 1 (2:18-cv-488) (stating that Greyhound employees "falsely imprisoned, assaulted, violated the civil rights of, and committed the unlawful violation of the personal liberty" of Lietzke after arriving in Birmingham on a bus from Nashville, Tennessee).  The employees, who

Lietzke does not identify, "purposely deprived [Lietzke] of freedom of movement by use of physical barrier and force . . . without [Lietzke's] consent which harmed [Lietzke], and such harm was substantially caused by the City of Birmingham's and unidentified, unspecified African-american [sic] black male Defendants' conduct." Doc. 1 (2:18-cv-469). The employees accomplished this by striking, shoving, kicking, and touching Lietzke. Doc. 1 at 2 (2:18-cv-469) & Doc. 1 at 2 (2:18-cv-488).

Lietzke was then jailed and released the next day after paying a $300 bond. Doc. 1 at 2 (2:18-cv-469) & Doc. 1 at 2 (2:18-cv-488). The complaint against Greyhound Lines, Inc., adds the seemingly unrelated allegation that Greyhound employees in St. Louis, Missouri, "intercepted and stole [Lietzke's] San Francisco, California bus tickets and itinerary for unexplainable and suspicious reasons" in February 2012. Doc. 1 at 3 (2:18-cv-488).

## C.    Claims

Lietzke's claims are difficult to pin down given the imprecise nature of his allegations and his tendency to scatter legal conclusions throughout his pleadings, but patterns emerge. Lietzke consistently references a "violation of civil rights" or "civil rights violations" in a majority of the complaints. He explicitly invokes the First and Fifth Amendments and challenges the lawfulness of the various police interactions, which the court will construe as claims under the Fourth Amendment. *See, e.g.*, Doc. 1 at 1 (2:17-cv-609) ("The City of Montgomery precipitated said actions without probable cause and without lawful privilege therefor, abridging [Lietzke's] right of the people peaceably to assemble under the First Amendment, and abridging [Lietzke's] right to plead the Fifth

Amendment under the Constitution of the United States.").  Additionally, he brings various state-law tort claims, including harassment, defamation, false imprisonment, and intentional infliction of emotional distress.

## II.  STANDARD OF REVIEW

The same principles that govern a dismissal under Federal Rule of Civil Procedure 12(b)(6) also govern the review of a complaint under § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted. *See Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008).  Under this standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

Moreover, a complaint is "frivolous" under § 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Both "inarguable legal conclusion[s]" and "fanciful factual allegation[s]" can give rise to a finding of frivolity. *Id.*  Section 1915 grants courts the power not only to "dismiss a claim based on an indisputably meritless legal theory, but also . . . to pierce the veil of the

complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* at 327.

In addition to the pleading requirements of *Twombly* and *Iqbal*, a plaintiff's *pro se* status must also be considered when evaluating the sufficiency of a complaint. "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, such leniency cannot serve as a substitute for establishing a viable cause of action. *See Odion v. Google Inc.*, 628 F. App'x 635, 637 (11th Cir. 2015) (recognizing that although courts must show leniency to *pro se* litigants, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action") (citations and internal quotation marks omitted). "While the pleadings of *pro se* litigants are liberally construed, they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. Saint Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010) (citations and internal quotation marks omitted).

## III.  DISCUSSION

### A.    Consolidation

Rule 42 of the Federal Rules of Civil Procedure provides that a district court may consolidate cases that "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). The decision "whether to consolidate is purely discretionary." *Eghnayem v. Boston Scientific Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017).

> In exercising its considerable discretion, the trial court is obliged to consider: Whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* (internal quotation marks omitted). Consolidation is proper where it results in the elimination of "repetition and confusion," but should not be employed where it prejudices the rights of one or more of the parties. *See id.* at 1314.

It is clear that all of Lietzke's cases in this district with pending *in forma pauperis* motions should be consolidated into one action. The cases involve common questions of both law and fact. Factually, the vast majority of the complaints are identical except for the alleged dates of the occurrences. Legally, the same analysis is applicable to each of the complaints because of the striking similarity in their factual allegations and causes of action—even for the three complaints that differ in substance from the rest. The risks of prejudice to any party and confusion are minimal, particularly in light of the significant time and judicial resources that would be conserved by consolidation. Accordingly, the court recommends the consolidation of all of Lietzke's complaints now pending in this district into one action, and addresses the legal sufficiency of the claims below.

## B.    Timeliness

The court construes Lietzke's claims as invoking 42 U.S.C. § 1983 to the extent he has alleged violations of his federal statutory and constitutional rights. *See, e.g.*, *Micklas v. Doe*, 450 F. App'x 856, 857 (11th Cir. 2012) ("42 U.S.C. § 1983 . . . provides a remedy for deprivation of federal statutory and constitutional rights by a person acting under color

of state law.").  Section 1983 claims are subject to the statute of limitations governing personal injury claims in the state in which the case was brought. *Powell v. Thomas*, 643 F.3d 1300, 1303 (11th Cir. 2011).  In Alabama, the statute of limitations for § 1983 actions is two years. *Id.*  Section 1983 claims accrue when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).

As discussed briefly above, one of Lietzke's complaints relates to events that allegedly occurred in 1999 and 2002, with the last incident occurring on December 23, 2002, nearly 15 years before Lietzke filed this complaint in the Eastern District of Michigan. *See* Doc. 1 at 1–5 (2:17-cv-674).  Thus, under even the most liberal reading of this complaint, Lietzke's claims in that case are time-barred.  And even if the court chose to exercise supplemental jurisdiction over the complaint's state-law claims after dismissing the federal claims, those claims also would be barred by the applicable statute of limitations.  Specifically, Lietzke appears to assert state-law claims for malicious prosecution, false imprisonment, harassment, and intentional infliction of emotional distress.  All of these claims except malicious prosecution are subject to a two-year statute of limitations. *See* Ala. Code §§ 6-2-38(h) & (l).  False imprisonment is subject to a six-year statute of limitations, making that claim untimely as well.[3] *See* Ala. Code § 6-2-34(1). Accordingly, all claims in the case designated as *Lietzke v. County of Montgomery, et al.*, 2:17-cv-674-MHT-GMB, are due for dismissal as untimely.

---

[3] A liberal reading of this complaint might also reveal a claim for assault and battery, which is subject to the same six-year statute of limitations as false imprisonment. *See* Ala. Code § 6-2-34(1).

C.    **Federal Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate (1) the deprivation of a federal constitutional or statutory right, and (2) that the deprivation was committed by a person acting under color of law. *Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015).  Lietzke has asserted claims under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, which the court will address in turn.

1.    *First Amendment*

Lietzke claims that, in each instance, the officers' actions infringed on the "Right of the people to peaceably assemble under the First Amendment."  While Lietzke does not elaborate on the basis for his First Amendment claim, he seemingly contends that during each interaction he was attempting "to peaceably assemble," and that the officers interfered with this right by confronting him, asking him questions, or telling him to go elsewhere. This is insufficient for a First Amendment claim.  The Supreme Court has held that the First Amendment does not include "a generalized right of 'social association' that includes chance encounters." *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).  Indeed, while "[i]t is possible to find some kernel of expression in almost every activity a person undertakes— for example, walking down the street or meeting one's friends . . . such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *Id.*

District courts presented with similar scenarios routinely conclude that these facts do not give rise to an actionable First Amendment claim, even if the arrest itself was otherwise unlawful.  To state a claim under the First Amendment, a plaintiff must allege "(1) that his speech or act was constitutionally protected, (2) that the defendant's retaliatory

conduct adversely affected the protected speech or act, and (3) that there is a causal connection between the retaliatory actions and the adverse effect on the protected speech or act." *Battiste v. Lamberti*, 571 F. Supp. 2d 1286, 1299 (S.D. Fla. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).  Lietzke has not alleged that his speech or conduct was constitutionally protected, let alone that the police officers' actions were in any way connected with an exercise of his First Amendment rights.  "Accordingly, even assuming that his arrest was wrongful . . . he is not protected by the First Amendment in this instance." *Ramos v. City of Miami*, 115 F. Supp. 3d 1372, 1374 (S.D. Fla. 2015).  Lietzke's attempt to state a viable First Amendment claim based on the facts as they are alleged in each of his complaints falls short.

### 2.    Fourth Amendment

Lietzke does not explicitly reference the Fourth Amendment in any of the complaints.  Nevertheless, because he invokes unspecified "Constitutional violations" and challenges his arrests as unlawful and lacking probable cause, the court has considered whether Lietzke's allegations support a viable Fourth Amendment claim for either false arrest, excessive force, or false imprisonment.  They do not.

### i.    False Arrest

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated." U.S. Const. amend. IV.  "A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004).  However, "[l]aw enforcement officers do not violate the Fourth

Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002).  This is true even if police officers do not have any basis for suspecting that a specific individual is committing illegal activity. *See id.* at 201.  Indeed, a Fourth Amendment seizure has not occurred until "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003) (internal quotation marks omitted).

In the 13 complaints filed outside this district, Lietzke has pleaded no facts suggesting that police officers restrained his liberty either by physical force or some show of authority.  Based on these complaints, "[t]here was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice." *Drayton*, 536 U.S. at 204.  Instead, Lietzke has alleged merely that the officers approached him in public locations and asked him questions before releasing him.  At most, in some instances, they instructed him to exit an interstate highway on which he had been walking.

In the two complaints filed in this district, in which Lietzke does claim that he was arrested in a Greyhound bus station, any Fourth Amendment claim would be foreclosed by a number of legal deficiencies.[4]  In *Lietzke v. Greyhound Lines, Inc.*, 2:18-cv-488-MHT-

---

[4] These complaints could be transferred to the United States District Court for the Northern District of Alabama, where "a substantial part of the events or omissions giving rise" to those claims occurred. 28 U.S.C. § 1391(b)(2).  However, because the claims are clearly frivolous and subject to dismissal under § 1915, the court recommends dismissal instead of a transfer.

GMB, Lietzke names Greyhound Lines, Inc., as the sole defendant, but "§ 1983 only provides for claims to redress state action." *Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001).   Lietzke has pleaded no facts plausibly suggesting that any Greyhound employee could be considered a state actor such that he or she would be subject to potential § 1983 liability.   Moreover, in *Lietzke v. City of Birmingham*, 2:18-cv-469-MHT-GMB, Lietzke states in conclusory fashion that the bus station arrest was "unlawful" and based on "frivolous and baseless charges," but he has pleaded no facts elaborating on the conduct leading to his arrest or the charges levied against him, or to support the notion that he was arrested without probable cause.   This is wholly inadequate for a § 1983 false arrest claim. *E.g.*, *Marx v. Gumbinner*, 905 F.2d 1503, 1505–06 (11th Cir. 1990) ("The existence of probable cause . . . is an absolute bar to a section 1983 action for false arrest."); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

### ii.   Excessive Force

Lietzke scatters excessive force allegations throughout the two Middle District of Alabama complaints, claiming that he was struck, shoved, and kicked while he was arrested at the Birmingham bus station.   "A genuine excessive force claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (internal quotation marks omitted).   Whether a police officer's use of force was objectively reasonable is determined by several factors, including "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury

inflicted and, (4) whether the force used was applied in good faith or maliciously and sadistically." *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000).

In his complaints, Lietzke has shed no light on the nature of the arrest or any of the factors that determine the reasonableness of an officer's use of force.   Thus, Lietzke's excessive force claim is, at best, a legal conclusion disguised as a factual allegation.   Such barebones allegations are insufficient to support a viable excessive force claim. *See, e.g.*, *Barr v. Gee*, 437 F. App'x 865, 877–78 (11th Cir. 2011) (finding, where the plaintiff "did not describe the 'beating' [at issue] or otherwise allege facts permitting a plausible inference that the force [the officers] used was unreasonable," his claims allegations were "vague and conclusory" and "wholly insufficient to state a claim").

### 3.    *Fifth Amendment*

Lietzke also claims that the officers interfered with his "right to plead the Fifth Amendment under the Constitution of the United States."   Presumably, Lietzke is referring to the provision that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V   But any claim under the Fifth Amendment based on the facts Lietzke has alleged is patently frivolous because he was "never prosecuted for a crime, let alone compelled to be a witness against himself in a criminal case." *Chavez v. Martinez*, 538 U.S. 760, 766 (2003).   Indeed, "a 'criminal case' at the very least requires the initiation of legal proceedings." *Id.*   As Lietzke has alleged in the majority of his complaints only that he was informally questioned by police officers and then released, he has not stated a viable claim under the Fifth Amendment.

Any Fifth Amendment claim in the complaint filed in this district against the City

of Birmingham—in which he complains of an arrest at a Birmingham bus station—is also due for dismissal. "An individual must show three things to fall within the ambit of the Fifth Amendment: (1) compulsion, (2) a testimonial communication or act, and (3) incrimination." *In re Grand Jury Subpoena*, 670 F.3d 1335, 1341 (11th Cir. 2012). Lietzke has alleged none of these things, claiming only that he was arrested and released after posting bond the next day. Given the nature of Lietzke's complaints and the scant factual information he has provided regarding the Birmingham arrest, the court concludes that any attempt to amend his complaint to state a viable Fifth Amendment claim would be futile. Accordingly, Lietzke's Fifth Amendment claims are ripe for dismissal.[5]

### 4. *Fourteenth Amendment*

Lietzke's assertion that he was falsely imprisoned can be construed as a § 1983 false imprisonment claim under the Fourteenth Amendment. "A § 1983 claim of false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009). "The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement." *Id.* To establish a due process violation, the plaintiff must show that the officer acted with "deliberate indifference in violating the plaintiff's right to be free from continued detention after the defendant knew or should have known that the detainee was entitled to release."

---

[5] This complaint also references the Second and Third Amendments to the United States Constitution. *See* Doc. 1 at 2 (2:18-cv-469). No extended discussion of these claims is warranted. The Second Amendment protects the "right of the people to keep and bear Arms" and the Third Amendment prohibits the peacetime quartering of soldiers in an individual's home without his or her consent. *See* U.S. Const. amend. II & U.S. Const. amend. III. Lietzke has not alleged any fact that implicates either of these provisions.

*May v. City of Nahunta, Ga.*, 846 F.3d 1320, 1329 (11th Cir. 2017).

In the majority of his complaints, Lietzke does not state a viable false imprisonment claim because he admits that he was merely questioned by officers and then released.  The only complaint that conceivably approaches an actionable § 1983 false imprisonment claim is the complaint in *Lietzke v. City of Birmingham*, 2:18-cv-469-MHT-GMB, because there Lietzke alleges that he was arrested.  However, this claim is due for dismissal because, once again, Lietzke has failed to allege the necessary factual predicate to suggest plausibly that the arrest was unlawful.  This forecloses any § 1983 false imprisonment claim just as it dooms Lietzke's § 1983 false arrest claim. *See, e.g.*, *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996) (requiring the absence of probable cause for a § 1983 false imprisonment claim "based on a detention pursuant to [an] arrest").

Put simply, Lietzke's *modus operandi* is to engage in a pattern of filing frivolous lawsuits both in this and other federal district courts throughout the country in flagrant violation of appropriate judicial process and procedure.  Most recently, a district court in Nevada observed that Lietzke had filed eight cases in that district with identical allegations against Alabama defendants, noting that "[d]espite repeated warnings against filing frivolous lawsuits, [Lietzke] continues to abuse the judicial process." *Lietzke v. City of Montgomery*, 2018 WL 702889, at *1 (D. Nev. Feb. 2, 2018).  That court thus declared Lietzke a vexatious litigant pursuant to 28 U.S.C. § 1651,[6] enjoining him from filing any

---

[6] "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

new lawsuits in that district without first obtaining leave from the court's Chief Judge. *See id.* Lietzke's 15 pending complaints stating nearly identical factual allegations reflect his scattershot approach to seeking relief in federal court based on claims that are not remotely actionable. This court ought not entertain his continued abuse of the judicial process and recommends the dismissal of all of his pending federal claims.

**D.  State-Law Claims**

Pursuant to 28 U.S.C. § 1367(c)(3), the court recommends that the District Court decline to exercise supplemental jurisdiction over Lietzke's remaining state-law claims because his claims arising under federal law are due for dismissal. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction"). Where all federal claims are dismissed prior to trial, district courts are encouraged to dismiss any remaining state-law claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). Before dismissing the remaining state-law claims, courts consider the factors of judicial economy, convenience, fairness, and comity. *See Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 532 (11th Cir. 2015) (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

"Both comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). "Federal courts are (and should be) loath to wade into uncharted waters of state law, and should only do so when absolutely necessary to the disposition of a case." *Ameritox*, 803 F.3d at 540. Indeed, the Supreme Court has declared that "[n]eedless decisions of state law should be avoided as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The court sees no reason to depart from this rule of thumb by adjudicating Lietzke's state-law claims if his federal claims are dismissed prior to service of process. Further, there is nothing before the court to suggest that the remaining factors— convenience and fairness—weigh in favor of retaining subject-matter jurisdiction, and the court can discern no possibility of significant prejudice to any party. Accordingly, the court recommends that the District Court decline to exercise supplemental jurisdiction over Lietzke's state-law claims pursuant to § 1367(c)(3).

## IV. CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that (1) the District Court consolidate the above-captioned actions, (2) that the motions to proceed *in forma pauperis* in each action be GRANTED, and (3) that the consolidated cases be DISMISSED prior to service of process under 28 U.S.C. § 1915(e)(2)(B). It is further ORDERED that the parties are DIRECTED to file any objections to the report and recommendation **not later than August 22, 2018**. Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the

party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 8th day of August, 2018.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE